ALDEN *v.* LEWIS, EXECUTOR, et al.

No. 42764 February 3, 1964 160 So. 2d 181

*Armis E. Hawkins,* Houston; *Roberts & Craig,* Oxford, for appellant.

*Travis, McKee & Franck, Green, Green & Cheney,* Jackson; *Jack N. Tucker,* Tunica; *James Stone & Sons,* Oxford; *L. G. Fant, Jr.,* Holly Springs, for appellees.

JONES, J.

Appellant was the contestant and appellees were proponents of the will and a codicil of Miss Kate A. Skipwith. The issues were: (1) Lack of mental capacity, and (2) undue influence. Both instruments were admitted to probate in common form. Thereafter the contest was filed.

A jury was empaneled but after the taking of evidence was concluded, the chancellor peremptorily instructed the jury to find for the proponents. For the reasons hereafter shown, we affirm.

I.

The testatrix executed her will on December 18, 1957. On May 29, 1958, she duly executed a codicil which specifically referred to her will of December 18, 1957, and amended Item No. 3 thereof, giving a clear and logical reason for its amendment.

Miss Skipwith was about 90 years of age at the time of execution of the will. She had inherited her estate from a half-sister and a half-brother. The contestant was a niece of the half-blood. The testatrix had never married.

There was a great amount of testimony as to her mental capacity, but the overwhelming weight of the

evidence was there was no incapacity. However, whether there was sufficient proof to the contrary to make it a jury issue has given us great concern in view of the decisions of this Court in such cases as Barnett v. Barnett, 155 Miss. 449, 124 So. 498; Ward v. Ward, 203 Miss. 32, 33 So. 2d 294; Maguire v. Carmichael, 240 Miss. 732, 128 So. 2d 581; Scally v. Wardlaw, 123 Miss. 857, 86 So. 625, and others.

In the will the greater portion of the estate was left in trust for the benefit of the Buie Museum at Oxford, which had been established from monies devised by, and at the request of, Miss Mary Buie, testatrix's half-sister. Testatrix's attorney, Phil Stone, her good friend, Will Lewis, and another friend, Mrs. Anna Wright Purser, were named as trustees to manage the trust, and were to serve without compensation. The Mayor of Oxford and his successors were to serve as trustee by virtue of the office.

Having no substantial direct evidence bearing on the issue of undue influence, the appellant relies almost wholly upon the principle that where a confidential relation exists between the testatrix and a beneficiary under the will and the beneficiary has been actively concerned with the preparation or execution of it a presumption arises that the beneficiary has exercised undue influence. Croft v. Adler, 237 Miss. 713, 115 So. 2d 683.

Conceding for the moment a confidential relationship, neither Mr. Stone nor Mr. Lewis received any benefits as a beneficiary. Mr. Lewis was named executor but the fees as executor are fixed by the court within the limits set by law. Mr. Stone was not named in the will as attorney for the executor, but, if so, his fees would be fixed on proof by the chancellor. They both were to serve as trustees without compensation.

The rule as stated in Page on Wills, Bowe-Parker Revision, Sec. 29.98, p. 626, is:

"The fact that the attorney who draws the will is named as executor does not raise a presumption of undue influence. This result may be justified, in theory at least, upon the ground that the executor gains no financial benefit by reason of his position, since his fees are only lawful compensation for his services, and for the risk which he undertakes. It is true that this assumption is false in many cases, as the compensation is greatly in excess of the fair value of the work done, but the court cannot be expected to recognize this fact, since the commissions and fees are fixed by statute, and there has thus been a legislative determination that the fees are a fair compensation for services. Since additional compensation is given for services not fairly contemplated, a provision in the will for such additional compensation as may be just, does not raise a presumption of undue influence. If property is devised to the executor upon a secret trust, his act in filling a declaration of trust, together with the will, is said to prevent a presumption of undue influence.

"The same principle applies where the party who draws the will is made executor and trustee, or trustee.

"In some cases, however, the fact that the trustee is given wide powers and is to receive a large compensation for his services has caused the courts to hold that he was in fact a beneficiary, and that a presumption of undue influence arose if it was shown that he drew the will.

"The fact that the person who draws the will is a stockholder and officer in a bank which is appointed trustee, or an officer of a charitable corporation which is a beneficiary under the will, of a member of a church which is a beneficiary, does not raise a presumption of undue influence."

In this case the parties accused of undue influence received no benefits. The evidence shows Miss Skipwith conferred with them separately — one was a business

man, her good friend and neighbor, and the other an attorney who had represented her in other matters for many years. She had the benefit of advice from each, independent of the other.

There are a number of assignments of error but in view of the actual basis of this decision, we find it unnecessary to detail the evidence or to enumerate and pass upon the other assignments as neither would harmfully affect the next issue.

 █ We are deciding the case on the ground that there was no evidence, and certainly no substantial evidence, of undue influence in the preparation and execution of the codicil on May 29, 1958, nor of mental incapacity at that time, and this renders it unnecessary to actually determine whether the evidence on mental capacity and undue influence in the execution of the will of December 18, 1957 was sufficient to go to the jury. As stated, the will and codicil were admitted to probate in common form, the record of which was first introduced to make a prima facie case for proponents. Contestant then presented her evidence but presented no substantial evidence as to the invalidity of the codicil. The attorney, the executor and one of the witnesses (the other being in Alaska) testified as to the mental capacity of Miss Skipwith at the very time of the execution of the codicil and as to its due execution. We agree with the chancellor that there was no proof to the contrary.

 █ Under such facts the case of Hogan, et al v. Walter Sillers, Administrator, etc., decided April 1, 1963, reported in 246 Miss. 574, 151 So. 2d 411, is applicable. There this Court said:

"The general rule prevailing in a majority of states is that a properly executed codicil operates as a republication of an earlier will or codicil no matter what defects may have originally existed in the execution of the earlier document. This broad rule is supported by cases from at least twenty-two jurisdictions. 21 A.L.R. 2d

822. This Court has not passed upon this question but we are of the opinion that the general rule just stated, and which is supported by the great weight of authority elsewhere, is sound and should be adopted. In the case of Taft v. Sterns, 234 Mass. 273, 125 N.E. 570, it is stated that the principle that a validly executed codicil constitutes a republication of the will does not rest upon the presence in the codicil of technical words in terms of affirming and republishing the original will, but upon the broader consideration that the execution of the instrument denominated as a codicil imports in the mind of the person executing the codicil the existence of a will which can be supplemented and modified. We are of the opinion that common sense requires the adoption of the rule that a valid codicil constitutes a republication under the circumstances existing in the present case.''

The rule as affecting cases of lack of testamentary capacity and undue influence is stated in 57 Am. Jur., page 429, Sec. 628, Wills:

''The authorities agree that a will which was invalid as originally executed, for want of testamentary capacity, or because of fraud or undue influence, is republished and validated by the execution of a codicil thereto by the testator at a time when he had testamentary capacity and was not subject to fraud or undue influence. Even the authorities which deny the rule that the execution of a valid codicil republishes and validates a will which was defectively executed concede that the execution of a codicil may republish and validate a will which was originally invalid for want of testamentary capacity or on account of undue influence upon the testator. . . .''

## II.

This appeal was without supersedeas. Following the appeal, the executor filed a petition for instructions; then an amended petition. This was on December 8,

1962. On January 16, 1963, the contestant filed an original bill attacking the trust feature of the will, which bill, so far as we are advised, is still pending. On January 17, 1963, the chancery court heard the petition for instructions and rendered a decree thereon. Appeal by the contestant was denied. The contestant then sought and obtained from this Court an order granting an appeal from the decree of January 17, 1963. Nothing further has been filed therein and since we are affirming this case in chief, we are dismissing the appeal from the decree of January 17, 1963.

Affirmed on the contest of the will; appeal as to order of January 17, 1963, dismissed.

*Lee, C. J., and Kyle, Gillespie and Rodgers, JJ.*, concur.

## ON MOTION TO AMEND JUDGMENT BY AWARDING STATUTORY DAMAGES

JONES, J.

This case was decided February 3, 1964. 160 So. 2d 181. Appellee has now filed a motion asking that the judgment be amended so as to include an award of five percent damages as provided by Sec. 1971, Miss. Code 1942.

As shown by the original opinion, this was a will contest. That was all that was involved. The petition for the contest of the will did not ask for possession of any real or personal property, nor did it seek a judgment or decree for a sum of money. The judgment was not for the possession of any real or personal property, nor was it for any sum of money. Neither was the judgment for any of the other matters mentioned in said Sec. 1971, under which it is provided that such damages be allowed. The estate, including the money, real estate, and personal property, was at all times under the control of the chancery court through its temporary administrator

and executor. This is not one of those cases covered by said Section 1971. The motion is therefore overruled. Seay v. Wofford, 106 So. 927; McKendrick v. Lyle Cashion Company, 234 Miss. 325, 337, 106 So. 2d 509.

The motion to amend the judgment so as to include five percent (5%) damages provided by section 1971 is overruled.

*Lee, C. J., and Kyle, Gillespie and Rodgers, JJ.,* concur.